Marshall TERKEL t/d/b/a Executive Business Systems and Executive Financial Systems, Plaintiffs,

v.

HEARTH ROOMS, INC., an Ohio Corporation, et al., Defendants.

Civ. A. No. 75–255.

United States District Court, W. D. Pennsylvania.

April 7, 1976.

Mark Glosser, Pittsburgh, Pa., for plaintiffs.

J. Chris Soich, Pittsburgh, Pa., for defendants.

## OPINION

GOURLEY, Senior District Judge:

■ This is a civil assumpsit proceeding with jurisdiction founded on diversity of citizenship.[1] The Court has afforded the parties a full and complete trial and has considered the arguments of counsel. Based thereon, it is the considered judgment of the Court that neither party is entitled to recover either on the original claim or on the counterclaim.

The facts may be briefly stated. The defendant, Hearth Rooms, Inc., is an Ohio corporation and the individual defendants, Thomas F. Lyden, Adeline R. Lyden and Verna Lyden, are the principal officers in the corporation. Although the defendants had obtained a lease to operate a restaurant at the Holiday Inn in North Jackson, Ohio, they experienced much difficulty in arranging financing for the equipment, fixtures and supplies to be used in the restaurant. In 1972, the defendant, Thomas F. Lyden, Secretary of the corporation, through an acquaintance, was introduced to the plaintiff, Marshall Terkel, an individual who was in the business of securing financial accommodations for business enterprises that were having difficulty in securing their own.

It is sufficient for our purposes to know that the plaintiff, Marshall Terkel, arranged for the defendants to communicate with a Mr. Frank Perper who in turn helped defendants acquire their necessary financing from the Madison Bank of Washington, D. C.[2] The loan agreement between the Bank and the defendants provided that in return for the loan of $154,652.55, the defendants would execute a chattel mortgage in favor of the Madison Bank of Washington, D. C., giving it a security interest in all equipment, fixtures and supplies of the defendant corporation. In addition, defendants were to repay $197,148.00 in sixty installments and that the individual defendants and Frank Perper guaranteed repayment of the loan.

As a result of plaintiff's assistance in helping defendants secure the necessary financing, plaintiff and defendants signed a lease agreement and addendum thereto which provided in pertinent part: (1) that the proceeds of the loan from the Madison Bank would be assigned to the plaintiff who would then purchase the requisite equipment, fixtures and supplies; (2) that the defendants would advance to plaintiff $8,736.46 which sum would represent the first and last

---

1. In this diversity action, the applicable law is the law, including the choice of law rules, of the forum state. *Erie Railway Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Pennsylvania courts apply the law of place where a contract is made and where it is to be performed. *Formigli Corp. v. Alcar Builders, Inc.*, 329 F.2d 79 (3 Cir. 1964). Thus, here Pennsylvania substantive law will govern the interpretation of the rights and obligations between the parties.

2. Mr. Perper, in addition to being an official in a corporation which arranges for the franchising of Holiday Inns and restaurants, is also a substantial shareholder in the Madison Bank of Washington, D. C.

monthly payments under the lease with the plaintiff and placement commission in the amount of $1,499.94; (3) that the plaintiff would be solely responsible for the payment to the suppliers from whom the equipment was purchased; (4) that the defendants would send $3,618.23 each month for sixty months to the plaintiff who would in turn pay $3,255.80 of that amount to the Bank on the note, retain a fee of $139.27, and make payments of sales tax in the amount of $139.16 to the State of Ohio; and (5) that the title to all equipment and fixtures would be in the plaintiff's name and that defendants would have the option to purchase said property when the note with the Bank was fully and completely satisfied.

Defendants, consistent with the provisions of the agreement, forwarded the sum of $3,618.23 to the plaintiff each month. However, in September of 1973, after learning that the plaintiff was making payments of $328.50 on the note instead of the agreed upon sum of $3,255.80, defendants discontinued sending their payments on the note through the plaintiff and began making the payments directly to the Bank.

The plaintiffs then filed the instant action alleging that the defendants breached their agreement by not sending the monthly payments to the plaintiff for disbursement. The plaintiff asserts that although the loan agreement between the defendants and the Bank called for the repayment of $197,148.00 in sixty payments, it only provided for payments in the amount of $328.50 per month. Plaintiff, however, readily admits that he knew that the Bank made an error since defendants obligation of $197,148.00 could never have been paid off in sixty installments at $328.50 per installment. Nevertheless, plaintiff continued to send $328.50 to the Bank each month and deposited in a savings account the difference between that amount and the $3,255.80 that the defendant sent to him for the payment on the note.

Defendants, on the other hand, contend that they were justified in terminating their dealings with plaintiff because plaintiff's failure to fulfill his part of the bargain was jeopardizing their loan agreement, damaging their credit rating, and destroying the good will of their business. Defendants assert that the plaintiff knew all along that the payments were to be in the amount of $3,255.80 instead of $328.50 but nevertheless, used the pretext of the Bank's technical error to take advantage of the situation and put the difference in his own bank account. In addition, defendants seek the return of their $8,736.46 which is still in the plaintiff's possession and represents the first and final payments as well as the placement commission under the agreement.

■ The law is well settled that when two persons enter into an agreement and the agreement provides that the obligation of performance on the part of one, presupposes the doing of some act on the part of the other, prior thereto, that the neglect or refusal to perform some act not only dispenses with the obligation of such performance but may also entitle that person to rescind. However, recission of a contract is only proper when the complaining party has suffered a breach so material and substantial in nature that it effects the very essence of the contract and serves to defeat the object of the parties. See: Generally *12 Williston, Contracts § 1455* (3rd Ed. Jaeger 1970).

■ The Court is convinced, after a most careful and exhaustive review of the record, that the defendants were justified in stopping their payments to the plaintiff. The agreement between the plaintiff and defendants provided in part that out of the $3,618.23 that defendants sent to him each month, plaintiff would apply $3,255.80 of that sum on the note that the defendants had with the Madison Bank. Plaintiff does not dispute the fact that he only sent $328.50 a month to the Bank instead of the $3,255.80; however, plaintiff claims that since the monthly installment book only provided for the payment of $328.50 per month,

he acted properly. The record reveals otherwise. Knowing all along that all the parties concerned had agreed that the payment on the note would be in the amount of $3,255.80 a month, the plaintiff nevertheless continued to send $328.50.[3] It was this total disregard for the intent of the parties on the part of the plaintiff which jeopardized the very same loan transaction which he had helped to set up between the defendants and the Madison Bank of Washington, D. C. Undoubtedly, the defendants' underriding concern in entering into the agreement with the plaintiff was to engage his assistance in securing financial accommodations for their business venture. Accordingly, when the plaintiff disregarded the intent of the parties his conduct served to defeat the very purpose for which the defendants had engaged plaintiff's services.[4] After a most careful review of the evidence the Court can only conclude that the plaintiff did not live up to its part of the agreement, and accordingly defendants were no longer obligated to send the payments through the plaintiff. As was stated in *Sunseri v. Mancuso*, 362 Pa. 161, 66 A.2d 830 (1949): "The court below in its opinion said, inter alia, 'Where a party avows his intention not to live up to his contract, tender is unnecessary since, as was said in *Suchan v. Swope*, 357 Pa. 16, 23 [53 A.2d 116, 119] (1947) " . . . the law is too pragmatic in its philosophy to require the doing of a vain and useless act. . . ." ' "

■ With respect to the counterclaim, the Court is of the firm belief that the defendants have not shown by the fair preponderance of all the evidence that they are entitled to any relief. Although defendants have established sufficient evidence to justify their making the rest of the payments on the note

directly to the Bank, they presented no evidence which would lead this Court to conclude that they were damaged by plaintiff's conduct. On the contrary, the record reflects that the defendants benefited from plaintiff's intercession and that the defendants were able to secure the necessary financial assistance for their business venture only after plaintiff had interceded in their behalf.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

---

**3.** In fact, the plaintiff immediately forwarded the withheld monies as soon as the Bank had discovered its error.

**4.** Under the loan agreement it was the defendants and not the plaintiff who were liable on the note.

See: Defendants Exhibit No. 3—letter dated September 23, 1975, from Herbert J. Weichter, Senior Vice-President of Madison National Bank in Washington, D. C. to J. C. Soich, attorney for defendants, indicating that defendants, not the plaintiff, are obligated on the note to Hearth Rooms, Inc.