Stephen WIERBINSKI, by Rena Wierbinski, His Next Friend, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Civ. A. No. 79–42 Erie.

United States District Court,
W. D. Pennsylvania.

Oct. 1, 1979.

James M. Antoun, Erie, Pa., for plaintiff.

John M. McLaughlin, Erie, Pa., for defendant.

## MEMORANDUM OPINION

KNOX, District Judge.

This case comes to us on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Defendant, State Farm Mutual Automobile Insurance Company, is an Illinois corporation, and plaintiff, twenty-one year old Stephen Wierbinski, a New York domiciliary at the time of the accident, is now residing in Pennsylvania. All material facts have been stipulated to by both parties in this action to recover insurance proceeds. On or about July 4, 1978, defendant executed and delivered to plaintiff an automobile insurance policy covering plaintiff's 1964 Buick vehicle in accordance with the Comprehensive Automobile Insurance Reparations Act of New York State (New York No-Fault Act), Section 670–77 (McKinney Supp.1976). The policy contained an "Out-of-State Insurance Endorsement" as required by the New York No-Fault Act.

On or about July 19, 1978, while the policy was in effect, plaintiff was involved in a one-car accident in the City of Erie, Commonwealth of Pennsylvania. This accident caused serious bodily injury to the plaintiff, eventually necessitating his confinement in Erie's St. Vincent's Health Center, where he remains today. Pursuant to the policy of insurance, defendant made payments totaling $51,000 to plaintiff, which defendant claims is the limit of its liability under the provisions of the New York No-Fault Act. Since plaintiff has already incurred medical and rehabilitative expenses far in excess of this amount, he asserts the applicability of the basic loss benefits available to victims of automobile accidents under the Pennsylvania No-Fault Motor Vehicle Insurance Act (Pennsylvania No-Fault Act), 40 P.S. § 1009.101 et seq., which provides for the payment of unlimited medical and rehabilitative benefits.

The case is now properly before the court on cross motions for summary judgment, as there is no genuine issue as to any material fact. *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62 (3d Cir. 1978). The legal question to be decided is whether, under the Pennsylvania No-Fault Act, the plaintiff is entitled to receive the unlimited basic loss benefits for losses of this kind provided for in the Pennsylvania Act, or whether recovery is limited to the $51,000 provided for in the New York Act.

■ Prior to the passage of the No-Fault Act, Pennsylvania replaced the *lex loci delictus* and *lex loci contractus* rules with the modern "contacts" approach to conflict of laws for both contracts and torts. Under this approach, the court is to apply the law of the state with the most significant relationship to, or contact with, the parties and the transaction. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205 (3d Cir. 1970); *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966). The Pennsylvania legislature has expressly incorporated a choice of law provision into the Pennsylvania No-Fault Act which states that "*the basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim . . . .*" 40 P.S. § 1009.110(c)(1). Both parties agree that whether the analysis is begun under the Pennsylvania conflict of laws rules, or under the statutory mandate of § 110(c), we must begin by examining Pennsylvania law. Pennsylvania law, in turn, directs us to the New York No-Fault Act to determine the basic loss benefits available to the plaintiff under these facts.

Section 672 of the New York No-Fault Act specifically includes New York domicili-

aries injured in out-of-state accidents within the scope of persons entitled to first party benefits under the New York Act.[1] Complications arise in sub-section 5 of § 672, which requires every New York insurance policy to provide insurance coverage for its vehicles traveling out-of-state at least in the minimum amount required by the laws of such other state.[2] Plaintiff's policy included an out-of-state endorsement to comply with this requirement which read as follows:

### 6778 OUT–OF–STATE ENDORSEMENT

It is agreed that, subject to all the provisions of the policy except where modified herein, the following provision is added: If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province *and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law,* in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance poli-

cy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss. (Emphasis added).

Plaintiff reasons that the statutory provisions of the New York No-Fault Act, together with the plain and ordinary meaning of the language of the out-of-state endorsement, indicate that plaintiff's coverage is increased to the level of coverage required by the Pennsylvania No-Fault Act.

Defendant disagrees that § 672.5 entitles plaintiff to all the benefits of the Pennsylvania No-Fault Act. Rather, defendant contends that § 672.1(b) specifically extends New York Personal Injury Protection (PIP) to New York domiciliaries injured in out-of-state accidents and that sub-section 5 was intended to protect other classes of victims who may be entitled to Pennsylvania basic loss benefits, such as a Pennsylvania domiciliary injured while riding in a car driven by a New York domiciliary with a New York insurance policy. Defendant interprets sub-section 5 as requiring the maintenance of insurance "coverage" sufficient to pay any claims which may arise under the laws of Pennsylvania, by a Pennsylvania domiciliary, distinguishing the requirement of providing minimum coverage from a guarantee that a New York domiciliary will receive Pennsylvania basic loss benefits.

Undoubtedly § 672.1 of the New York No-Fault Act extends New York first party benefits to New York domiciliaries injured in accidents outside the state of New York. The difficult question is the construction of § 672.5. Under the interpretation given to the mirror provision of § 672.1 in the Pennsylvania No–Fault Act, § 110(b),[3] § 672.1

---

**1.** § 672. Entitlement to first party benefits; additional financial security required.

 1. Every owner's policy of liability insurance . . . shall also provide for; . . . the payment of first party benefits to:

 (b) the named insured and members of his household, other than occupants of a motorcycle, for loss arising out of the use or operation of an uninsured motor vehicle and, *outside of this state, of an insured motor vehicle.*

**2.** § 672.5 reads: "Every owner's policy of liability insurance issued in satisfaction of articles six or eight of the vehicle and traffic law shall

also provide, when a motor vehicle covered by such policy is used or operated in any other state . . . , insurance coverage for such motor vehicle at least in the minimum amount required for such vehicle by the laws of such other state . . . ."

**3.** § 110(b) reads: (1) An obligor providing security for the payment of basic loss benefits shall be obligated to provide, and each contract of insurance for the payment of basic loss benefits shall be construed to contain, coverage sufficient to satisfy the requirements for security covering a motor vehicle in any state in which any victim who is a claimant or whose

may be read to guarantee a New York domiciliary benefits *at least* up to the statutory maximums of the New York Act.[4] This insures that New York domiciliaries will at least be entitled to the New York PIP benefits in the event they are involved in an accident in a no-fault state with substantially lower benefits. The logical construction of § 672.5 and the out-of-state endorsement is that they raise the limits of liability and the kinds of coverage afforded by plaintiff's insurance policy to meet any higher requirements of a no-fault state in which an accident occurs.

 There is nothing in the wording of the New York Act or in the insurance policy to indicate clearly and unambiguously that the increased protection of the Pennsylvania Act was meant only to be afforded to Pennsylvania domiciliaries who may be injured by a New York policy holder. An insurance policy must be read to give effect to its plain and ordinary meaning, and any ambiguity in the language must be read in a light most favorable to the insured. *Rubin v. Empire Mutual Ins. Co.*, 57 Misc.2d 104, 290 N.Y.S.2d 241, aff'd, 57 Misc.2d 106, 291 N.Y.S.2d 906 (1967); *Polstein v. Pacific Fire Ins. Co.*, 122 Misc. 194, 203 N.Y.S. 362 (1924). Where, by reason of ambiguity in the language employed in a policy in insurance, there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured, and the other favorable to the company, the former will be adopted. 44 C.J.S. Insurance § 297c; *Mobil Oil Corp. v. Reliance Co.*, 69 Misc.2d 876, 332 N.Y.S.2d 532, aff'd 39 A.D.2d 839, 333 N.Y.S. 747 (1971). Either the out-of-state endorsement plainly states that the limits of State Farm's liability and the kinds of coverage afforded by the policy shall be as set forth in the Pennsylvania law, or the wording is susceptible of two interpretations. In either case, it is clear that the matter must be resolved in a manner favorable to the plaintiff. Therefore, the plaintiff's contract of insurance

and the New York No-Fault Act must be read to raise defendant's liability and plaintiff's coverage to be in accordance with Pennsylvania law.

The Pennsylvania law sets out the requirements for the minimum security to be carried by each vehicle operating within the Commonwealth in § 104 of the No-Fault Act which provides, in pertinent part, as follows:

§ 104. Required motor vehicle insurance

(a) Security covering a motor vehicle— Every owner of a motor vehicle which is registered or which is operated in this Commonwealth by the owner or with his permission, shall continuously provide security covering such motor vehicle while such vehicle is either present or registered in the Commonwealth. *Security shall be provided for the payment of basic loss benefits* . . . .

Basic loss benefits are "benefits provided in accordance with this act for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms and conditions provided or authorized in accordance with this act." 40 P.S. § 1009.103. Defendant makes much of the phrase "subject to any limitations, exclusions and conditions as otherwise provided in this act," contending that § 110(c), the choice of law section constitutes such a limitation. By directing inquiry initially to the New York Act to determine coverage, defendant argues that all benefits to plaintiff are "limited" to the ceilings of the New York law. Such an interpretation is inconsistent with our construction of § 672.5 of the New York Act and would result in an eternal ping pong volley between the laws of the two states. Defendant's position is also contrary to the general policy of the Pennsylvania No-Fault in awarding basic loss benefits. The General Assembly stated certain of its major goals to be:

§ 102(a) Findings and Purposes

---

survivors are claimants is domiciled or is insured.

4. *The Pennsylvania No-Fault Motor Vehicle Insurance Act*, David S. Shrager, ed., Pennsylvania Trial Lawyers Association, 1979, p. 12.

(3) the maximum feasible restoration of *all individuals* injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce;

(4) to avoid any undue burden on commerce during the intrastate transportation of individuals, it is necessary and proper to have a Statewide low-cost, comprehensive, and fair system of compensating and restoring *motor vehicle accident victims* and the survivors of deceased victims;

. . . . .

(6) careful studies, intensive hearings, and some State experiments have demonstrated that a basic system of motor vehicle accident and insurance law which:

(A) assures *every victim* payment of all his basic medical and rehabilitation costs, and recovery of a reasonable amount of work loss, replacement services and survivor's loss . . . . (Emphasis added).

Defendant's construction of § 110(c) compounds the existing conflict between § 110(c) and § 201(a) of the Pennsylvania No-Fault Act, which grants Pennsylvania basic loss benefits to *all persons* injured in the Commonwealth.[5] Defendant construes § 201 as a general jurisdictional statement, entitling out-of-state accident victims to Pennsylvania benefits only "in accordance with the provisions of this act." Defendant again asserts that § 110(c) is a qualifying provision which absolutely limits plaintiff to the benefits available to him in his home state. Although it is correct that § 201 is also qualified to be considered "in accordance with all other provisions of the act," § 110(c) is not the only other provision to be studied in resolving the conflict. In *Pa. No-Fault Motor Vehicle Insurance Act—Practice Under the Act* (Pub. #61, 1975),

cited with approval by the Superior Court of Pennsylvania in *Heffner v. Allstate Ins. Co.,* —— Pa.Super. ——, 401 A.2d 1160, 1161 (1979), the Pennsylvania Bar Institute considered the dilemma raised by the contradiction between § 201(a) and § 110(c) and admonished that § 110(c) must be considered in conjunction with § 201. The Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921(a), emphasizes that "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." To apply § 110(c) as a strict limiting section would be to contradict the express purposes of §§ 102(a)(3), (4), (6), 103, 104(a) and 201(a).

A liberal interpretation of the policies and purposes of the Pennsylvania Act is in line with the strong statements by the Pennsylvania Supreme Court in *Heffner v. Allstate Ins. Co., supra,* that the Act intended to be fair, comprehensive, and achieve:

". . . the maximum feasible restoration of all individuals injured . . . on Commonwealth highways." Historically, the courts of this Commonwealth have routinely followed this spirit and found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured. 401 A.2d at 1162–1163.

Therefore, any ambiguities within the Act, must be resolved in favor of the insured.

The only New York precedent concerning this issue, a decision by a no-fault arbitrator, supports our construction of the two acts. In *Villegas v. Hertz Corp.,* N.F. 198, 1978 (New York No-Fault Arbitration Reports of the American Arbitration Association) it was decided that a New York resident, injured in Pennsylvania while driving a New York based rental car, was a covered

---

5. § 201. Right to basic loss benefits: limitation on benefits.

 (a) *Accident within this State.*—If the accident resulting in injury occurs in this Common-

wealth, *any victim* or any survivor of a deceased victim *is entitled to receive basic loss benefits* in accordance with the provisions of this act.

person under Pennsylvania law for purposes of receiving Pennsylvania basic loss benefits. The arbitrator found that the underlying purpose of the Pennsylvania law is to provide coverage for all persons involved in an accident in that state, and that Pennsylvania has a "legitimate and paramount interest" in providing coverage for injuries within its boundaries.

The only Pennsylvania decision to deal with this question to date is *Sefret v. Tarter*, York Co., No. 76–S–3813, Jan. 9, 1979, which held that the survivors of a Maryland resident, who was killed in an automobile accident in Pennsylvania, were eligible to recover Pennsylvania no-fault benefits. The court based its decision on the fact that Maryland's No-Fault Act did not comply with the definition of "state no-fault plan" contained in the Regulations [6] and therefore did not fall within the language of § 110(c).[7]

There is some merit to the reasoning that it is more equitable to provide each person with the coverage he/she expected and paid premiums for in his/her state of domicile than to impose Pennsylvania law upon him/her merely for being injured while traveling through the state. It must be re-emphasized that the plaintiff in this case is entitled to the benefits provided for by Pennsylvania law because that is the coverage for which he contracted and towards which premiums were paid in his home state and because that is the coverage mandated by the laws of his domicile, *not* solely because the accident occurred on Pennsylvania's highways.

Also, none of the policy arguments favoring limiting an accident victim to the remedies of his domicile would be furthered under the facts of this case, in which Pennsylvania now has the most significant contacts with the parties. The plaintiff is currently confined to a geriatric hospital operated by the Commonwealth of Pennsylvania, running up medical bills which will go unpaid unless Pennsylvania benefits are extended to him. If plaintiff's bills go unpaid, it is the hospitals and physicians in Pennsylvania which will go uncompensated, and the Commonwealth of Pennsylvania which will most likely end up burdened with his support. It is plaintiff's insurance policy which specifically provided for coverage in the amount required by the Commonwealth of Pennsylvania, and it is plaintiff's insurance company which will meet the burden of its contractual obligation, not the insurance system in Pennsylvania. While it may seem like a stroke of luck that plaintiff's accident occurred in Pennsylvania instead of New York, it is not good fortune from which plaintiff alone will benefit. Hopefully, our decision will enable the plaintiff to reach the maximum feasible restoration which the Pennsylvania legislature intended. At minimum, it will assure the payment of his actual medical and rehabilitative costs incurred towards that end.

Based on the foregoing, the plaintiff's motion for summary judgment will be granted; defendant's motion for summary judgment must be denied.

In light of our determination that Pennsylvania has the most significant contacts in this case, it is the Pennsylvania No-Fault Act which must govern the award of attorney's fees and interest on overdue insurance proceeds. These questions are difficult in themselves and will be taken up at a later date. The plaintiff's attorney is directed forthwith to submit to the court an accounting of his fees and disbursements in connection with the within action within 10 days. If parties cannot stipulate to the above, defendant is directed to file a re-

**6.** 31 Pa.Code § 66.1–110(c)(1)(b).

**7.** While it is unclear exactly what is required for a state's no-fault plan to qualify for the definition under the Pennsylvania law, commentators have suggested that an acceptable no-fault plan is one which at least approaches the Pennsylvania Act in terms of the nature and amount of protection for economic losses. *The Pennsylvania No-Fault Motor Vehicle Insurance Act* at p. 13. Fortunately, it is not necessary to decide the question of whether New York's $50,000 limit approaches the unlimited benefits provided for in the Pennsylvania No-Fault Act.

sponse thereto within 20 days of receipt of such an accounting. An appropriate order will be entered.