## Holden v. Prudential Property & Casualty Insurance Company

*Raymond E. Ginn Jr.,* for plaintiffs.
*Jonathan Butterfield,* for defendant.

KEMP, *P.J.,* October 30, 1987 — Plaintiffs commenced the instant action against defendant seeking recovery under the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101 et. seq., for certain items of allowable expense as defined under that act arising out of a motor vehicle accident which occurred on June 11, 1981. On July 11,

1986, defendant filed a motion for summary judgment, seeking dismissal of plaintiffs' claim, on the ground that plaintiffs have no claim for no-fault benefits against defendant. Plaintiffs have filed a motion for partial summary judgment on the issue of liability alone.

## STATEMENT OF FACTS

On June 11, 1981, Susan Holden was a passenger in a vehicle owned and operated by Richard E. Rumsey, which was traveling south on Pa. Route 549 in Tioga County, Pa. At that time and place, Mr. Rumsey was involved in a single motor vehicle accident causing serious injuries to Susan Holden.

At the time of the accident, Richard Rumsey was a Pennsylvania resident, insured under a Pennsylvania no-fault motor vehicle insurance policy issued by defendant Prudential Property and Casualty Insurance Company. Plaintiff, Susan Holden, has been a resident of the state of New York at all times relevant to this action. At the time of the accident, plaintiff was insured as a resident relative under her father's policy of insurance issued by the Allstate Insurance Company pursuant to the New York Comprehensive Automobile Insurance Reparations Act (New York's No-fault law). Susan Holden has applied for and received New York no-fault benefits from Allstate in the maximum amount permitted under New York's no-fault law, $50,000, for wage loss and medical expense. Plaintiff received additional coverage through a Blue Cross and Blue Shield group health policy issued through her father's work place.

Plaintiff seeks to collect additional no-fault benefits from the Pennsylvania no-fault policy issued by Prudential to Richard Rumsey.

## DISCUSSION

The commonwealth established a no-fault law abolishing the action for tort arising out of automobile accidents. The no-fault law structured certain requirements for damages suffered as the result of automobile accidents. It also established certain limitations on the recovery of damages. The law required that insurance companies issue contracts of insurance in compliance with the no-fault law.

The no-fault law concept was adopted by other states with variations on the limitation of damages and the damages recoverable. Therefore because of the fact that automobiles are by their very nature transitory and accidents occur in states other than the state of registration of the vehicle and the domicile of the owner, conflict questions arose as to the applicability of the law of the various states.

The no-fault laws of each state generally had provisions for the application of state law to nonresident persons who suffered injury as the result of damages incurred in an automobile accident. The varying factual situations gave rise to court decisions not always in harmony with a literal reading of the statutes. The courts have been prone to find recovery where ever possible. This has created confusion and uncertainty to the extent that the no-fault law in the commonwealth was repealed and replaced by a subsequent enactment.

The uncertainty created by the statute appears to have arisen from the lack of uniformity in applying conflict laws without the application of contract law. Each case was decided on its own peculiar facts. We therefore will apply the law of conflicts and contracts as we view it recognizing that in this case as

in many cases, the practicing attorney and trial courts have little guidance from the doctrine of stare decisis.

Prior to the passage of the No-fault Act, Pennsylvania replaced the lex loci delictus and lex loci contractus rules with the modern "contacts" approach to conflict of laws for both contracts and torts. Under this approach, the court is to apply the law of the state with the most significant relationship to, or contact with, the parties and the transaction. *Wierbinski v. State Farm Mutual Auto. Ins. Co.,* 477 F. Supp. 659 (3d Cir., 1979); *Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205 (3d Cir., 1970); *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966). Consistent with the contacts approach, the Legislature structured the No-fault Act so the courts were to consider a party's domicile as the critical contact. *Toter v. Knight,* 278 Pa. Super. 547, 420 A.2d 676 (1980). The potential accident victim anticipates in the first instance that he must comply with, and will receive benefits under his insurance policy. Id. The statutory scheme was to ensure the reasonable expectations of all motor vehicle accident victims within the commonwealth. Simultaneously, the Legislature intended to prevent a drain on the insurance system from benefits awarded to out-of-state residents who pay no insurance premiums in this jurisdiction. Id.

With the passage of the no-fault law, Pennsylvania abolished tort liability for injuries sustained in motor vehicle mishaps. Specifically, section 301(a) of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.301(a) (1979-80 Supp.) provides:

"Tort liability is abolished with respect to any injury that takes place in this state in accordance with

the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle . . . ."

As interpreted by *Toter v. Knight*, 278 Pa. Super. 547, 420 A.2d 676 (1980), section 301(a) abolishes tort liability with respect to *any injury* that takes place in this state arising out of the maintenance or use of a motor vehicle and necessarily encompasses injuries by nonresidents. Nonresidents injured in motor vehicle mishaps within the commonwealth are relegated to the laws of their state of domicile to commence an action in tort.

"The right of a victim or of a survivor of a deceased victim to sue in tort shall be determined by the law of the state of domicile of such victim. If a victim is not domiciled in a state, such right to sue shall be determined by the law of the state in which the accident resulting in injury or damage to property occurs." 40 P.S. §1009.110(c)(2) (1979-80 Supp.)

As provided under section 110(c)(2), the nonresident always retains the tort remedies that are available under the law of his home state. *Toter,* supra. Therefore, should plaintiffs seek tort recovery, they are left to the devices of New York state law. Otherwise, this case remains in the exclusive venue of contract law. To analyze as such, we must begin by examining Pennsylvania law.

Governed by the Pennsylvania No-fault Act, we first look to section 201 as modified by section 110. Section 201 provides as follows:

"(a) Accident within this state. — If the accident resulting in injury occurs in this commonwealth, any victim, or any survivor of a deceased victim is entitled to receive basic-loss benefits in accordance with the provisions of this act."

As directed by section 201, "in accordance with the provisions of this act" section 110 distinguishing between victims who are from states with no-fault plans, and victims who either are not domiciled in any state or are from a state which has no no-fault plan is read to modify section 201. Section 110 reads as follows:

"(1) The basic-loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault benefit in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs." 40 P.S. § 1009.110(c)(1) (1979-80 Supp.)

The court in *Pryor v. Fireman's Fund Insurance Co.*, 537 F.Supp. 971 (W.D. Pa., 1982), aff'd 696 F.2d 984 (3rd Cir., 1982) first noted that section 110 (c)(1) contains the choice of law provisions for determining the yardstick to be used for calculating basic-loss benefits to a victim who is domiciled in another state. This rule seems to be quite clear: If the victim's home state has a no-fault plan, his basic-loss benefits are determined by that plan; if the victim's home state lacks a no-fault plan, then he must look to the law of the state in which the accident occurred. 537 F.Supp. at 973, qutoing from *Swezey v. Home Indemnity Co.*, 571 F. Supp. 224 (D.Del., 1983). Thus, where the victim is domiciled in a state which has a no-fault plan, the applicable

law is the law of his state of domicile.[1]

New York state embraces a no-fault law, encompassed in New York Comprehensive Automobile Insurance Reparations Act §5101 et.seq. (1984). Both parties agree that as an out-of-state resident, plaintiff should look to the law of her state, New York, to determine entitlement to basic-loss benefits. The central and dispositive issue is whether or not the Prudential Insurance Company, the insurer of the Pennsylvania driver and vehicle, is responsible to plaintiff for unlimited medical coverage as available under Pennsylvania no-fault law.

Both parties cite *Hahn v. Liberty Mutual,* 336 Pa. Super 329, 485 A.2d 830 (1984) as controlling authority. We disagree. Hahn involved a New York resident who was injured in Pennsylvania while operating a rental car obtained and insured in New York. The court determined plaintiff was entitled under the New York insurance policy on the rental car and the New York no-fault act to receive unlimited medical benefits. The relevant factors in this case being the existence of a New York state registered automobile and a New York state policy of insurance. In fact, all the cases cited by the *Hahn* court in their decision involved an automobile registered in New York state along with an accompanying policy of New York state insurance. Plaintiffs have cited *Toter v. Knight,* 278 Pa. Super. 547, 470 A.2d 676 (1980) and *Wierbinski v. State Farm Mutual Automobile Insurance Co.,* 477 F.Supp. 659 (W.D. Pa., 1979) in support of their case. As in *Hahn,* these cases do not establish law applicable to the sub judice. *Toter* involved a New Jersey state

---

1. See *The Pennsylvania No-fault Motor Insurance Act,* David S. Shrager, ed., Pennsylvania Trial Lawyers Association, 1979 pp. 125-128.

resident injured in Pennsylvania while operating a vehicle registered and insured in New Jersey. Similarly in *Wierbinski,* the New York state resident while operating his New York state registered and insured automobile was involved in a one-car accident in the commonwealth of Pennsylvania.

Albeit factually different, we believe this case is controlled by the reasoning of *Swezey v. Home Indemnity Company,* 691 F.2d 163 (3d Cir., 1982), on remand, 571 F.Supp. 224 (D.Del., 1983) and its progeny. *Swezey* addressed the proper determination of insurance benefits a nondomiciliary is entitled to receive under an automobile policy drafted in accordance with the Pennsylvania no-fault law and issued to a resident of that state. Plaintiff, Swezey, a Delaware resident, was seriously injured in an automobile collision that occurred in Delaware while a passenger in a car registered in Pennsylvania and operated by a Pennsylvania resident.

Unlike the case before the court, the Swezey accident occurred outside the commonwealth. We believe this factual difference is negligible under the reasoning employed by the court. First, the *Swezey* court determined Pennsylvania no-fault benefits to be appropriate under sections 201(b)[2] and 110 (c)(1),[3] we similarly find those benefits available

---

2. Section 201(b), 40 Pa. Stat. Ann. § 1009.201(b) reads in pertinent part: "Accident outside this state — If the accident resulting in injury occurs outside of this commonwealth, a victim . . . is entitled to receive basic-loss benefits if such victim was . . . (2) the driver or other occupant of a secured vehicle."

3. Section 110(c)(1), 40 Pa. Stat. Ann. § 1009-110(c)(1) reads in pertinent part: "Applicable law — (1) The basic-loss benefits available to any victim . . . shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury oc-

under section 201(a)[4] and 110(c)(1). While 201(b) applies to accidents occurring outside the commonwealth and 201(a) applies to accidents occurring within the commonwealth, the result is the same, an entitlement to receive basic-loss benefits under the provisions of the Pennsylvania No-fault Act. Secondly, the action for tort liability under a Pennsylvania policy of insurance has been abolished for incidents arising out of automobile mishaps. *Toter v. Knight,* supra.

The construction of a contract is governed by the law of the state where the contract was made. *Terkel v. Hearth Rooms Inc.,* 410 F.Supp. 1160 (W.D. Pa., 1976); *McNair v. American Insurance Co.,* 210 Pa. Super. 107, 232 A.2d 64 (1967); *Crawford v. Manhattan Life Insurance Co.,* 208 Pa. Super. 150, 221 A.2d 877 (1966). The Prudential policy of insurance issued to Richard Rumsey was contracted in Pennsylvania, and thus is governed by the laws of this commonwealth. Specifically it is important to bear in mind that plaintiffs' rights arise under the insurance policy and not under any particular statute. *Swezey,* 691 F.2d at 165. This suit is purely and simply a contract claim based upon an insurance policy and it is the terms of that policy

---

curs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss-benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs."

4. Section 201(a), 40 Pa. Stat. Ann. §1009.201(a), reads in pertinent part: "Accident within this state. — If the accident resulting in injury occurs in this commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic-loss benefits in accordance with the provisions of this act."

that determine the outcome. Id. at 166. An insurance contract that is written in accordance with the Pennsylvania no-fault law incorporates the statute so that the Pennsylvania act becomes a term of the contract, but the statute does not acquire any independent controlling effect. *Shishko v. State Farm Insurance Co.*, 553 F.Supp. 308, 311 (E.D. Pa., 1982). The incorporation of state statutes does not alter the contractual nature of the claim and the issue remains one of interpreting the policy. *Swezey*, 691 F.2d at 166.

Thus we look to the applicable language contained in the Prudential insurance policy. Identical to the language of the policy in *Swezey* and similar to that of *McKay v. Liberty Mutual Insurance Co.*, 579 F.Supp. 740 (E.D. Pa., 1984), the Prudential policy provides that:

"In accordance with the Pennsylvania No-fault Motor Vehicle Insurance Act, the company will pay any or all personal injury protection benefits for: (a) medical expenses . . . for bodily injury to an eligible person due to an accident resulting from the . . . use of a motor vehicle. . . .'eligible person' means (b) 'any . . . person who sustains injury (1) while occupying . . . the insured motor vehicle. . . .' " (Personal Injury Protection Coverage, page 9).

Further, the policy provides:
"CONDITIONS:
"I. Applicable Law. Regardless of any other provisions of this endorsement, the personal injury protection coverage available to any eligible person or any survivor(s) of a deceased eligible person shall be in accordance with the Pennsylvania No-fault Motor Vehicle Insurance Act.
". . . The premiums for and the coverage of this policy conform to the Pennsylvania No-fault Motor

Vehicle Insurance Act." (Personal Injury Protection Coverage, page 13).

The Prudential policy requires consulting the Pennsylvania statute to determine the applicable coverage conditions. Sections 110(c) (1) and 201[a] should be read together so that the basic-loss benefits, which include medical expenses, are determined by the no-fault plan of the state in which the victim is domiciled. *Swezey,* supra.

Additionally, section 110(b)(1) provides that an insurance contract "shall be construed to contain, coverage sufficient to satisfy the requirement for security covering a motor vehicle" in the state in which the victim is domiciled. *Swezey,* 571 F.Supp. at 226.

The New York Comprehensive Automobile Insurance Reparations Act is a no-fault plan. *Shishko,* supra. Therefore, in accordance with the insurance policy, which incorporates the Pennsylvania statute, the basic-loss benefits available to plaintiff are to be determined by New York law. The New York no-fault act provides a limit of $50,000 for "basic economic loss." Section 5102 of the New York no-fault act provides:

"a. Basic economic loss means, up to fifty-thousand dollars per person of the following combined items, subject to the limitations of section five thousand one hundred eight of this article: (1) All necessary expenses incurred for: (i) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical and occupational therapy and rehabilitation; (iii) any nonmedical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of this state; and (iv) any other professional health services; all without limitation as to time, provided that within one year after the date of accident causing

the injury it is ascertainable that further expenses may be incurred as a result of the injury. For the purposes of determining basic economic loss, the expenses incurred under this paragraph shall be in accordance with the limitation of section five thousand one hundred eight of this article." [Section 5108 regards limits on charges by providers of health services.] Thus, medical expenses are included in "basic economic loss."

To satisfy the Pennsylvania mandate that the coverage be "sufficient to satisfy the requirements for security covering a motor vehicle in any state in which any victim who is a claimant . . . is domiciled," 40 Pa. Stat. Ann. §1009.110(b)(1), plaintiff is due to receive the limit of $50,000 required by New York law. By including the pertinent text of the Pennsylvania act in the insurance policy, Prudential agreed to pay basic-loss benefits in differing amounts depending on the domicile of the victim. For a domiciliary of Pennsylvania, the benefits are the unlimited medical coverage of the Pennsylvania act. When the victim is a domiciliary of another no-fault state, the amount of benefits is calculated by reference to the schedule adopted in that locality, in this case [New York]. *Swezey,* 691 F.2d at 168.

Absent an express agreement or the presence of an ambiguity, the insurance contract is interpreted to include only the minimum no-fault coverage required by the victim's state no-fault plan. The minimum coverage required by the New York no-fault plan is $50,000. *Shishko,* 553 F.Supp. at 313. Unless an insured has actually contracted for additional coverage, the insurance contract will be construed to provide coverage which equals the requirements of the respective no-fault plans of the victim's domicile. *Swezey,* 571 F.Supp. at 230. If a

Pennsylvania insured desires additional no-fault coverage for a nonPennsylvania victim, above the minimum requirements of the victim's state no-fault plan, he must contract for such additional coverage. Merely because the Pennsylvania insured has the ability to contract for additional coverage, however, does not mandate a finding that a victim domiciled in another state is entitled to recover an amount of basic-loss benefits which exceeds the requirements of the victims state no-fault plan. Id.

There appears to be no agreement or provision in the Prudential policy to provide additional coverage to the nonresident above the minimum coverage required by the New York no-fault plan of $50,000. Accordingly, we restrict plaintiff's recovery of basic loss benefits under Prudential's insurance contract issued to the driver of the vehicle to $50,000.

The case of *Shishko v. State Farm Insurance Co.,* 553 F.Supp. 308 (E.D. Pa., 1982) involved an accident in the commonwealth where plaintiff, a New York state resident, was struck and injured by a Pennsylvania registered vehicle, operated by a Pennsylvania driver and insured in Pennsylvania by State Farm Insurance Company in accordance with the Pennsylvania No-fault Act. Due to an ambiguity in the policy of insurance, the court found plaintiff entitled to unlimited medical benefits. Most important to our case, we note that except for the ambiguity in the contract, the court would have found under Pennsylvania law, where the insurance policy incorporated the state no-fault statute, the recovery available to the New York domiciliary was medical benefits of $50,000. Because the New York act is a no-fault plan, section 110(c)(1) as incorporated into the policy "restricts the amount recoverable, but does not eliminate . . . entitlement to benefits under the insurance contract". *Swezey,* supra, at 167. Sec-

tion 671(1) of the New York act restricts "basic economic loss" to fifty-thousand dollars. Medical expenses are included in "basic economic loss." *Shishko,* supra, at 312.

Finally we cite a nearly apposite case, *McKay v. Liberty Mutual Insurance Co.,* 579 F.Supp. 740 (E.D. Pa., 1984). In *McKay,* a Delaware resident was injured in a New Jersey automobile accident while a passenger in a vehicle owned and operated by a Pennsylvania resident. At the time of the accident plaintiff maintained a policy of no-fault automobile insurance issued by Liberty Mutual Insurance Company under Delaware law. Liberty Mutual paid plaintiff its policy limits of $100,000 in first party no-fault benefits under its policy. After being paid the policy limits by his own no-fault insurer, plaintiff brought an action to recover basic-loss benefits under the Pennsylvania resident's no-fault policy. On a motion for summary judgment, the court found that basic-loss benefits available to plaintiff were to be determined by Delaware law. And, plaintiff was entitled to receive minimum benefits required by Delaware law from the Pennsylvania resident's no-fault carrier. Accordingly, we find that plaintiff in this case is entitled to receive from the Pennsylvania resident's no-fault carrier, Prudential, the minimum benefits determined by New York law.

Finally, defendants request the court to enter a summary judgment in their favor on the grounds that neither Pennsylvania nor New York law allows for recovery against more than one no-fault policy. In support of their argument, defendants cite *Antanovich v. Allstate Insurance Co.,* 320 Pa. Super. 322, 467 A.2d 345 (1983). In *McKay v. Liberty Mutual Insurance Co.,* supra, the United States District Court rejected this argument, holding that,

"[T]he case is clearly distinguishable because: (1) 'stacking' in *Antanovich* concerned a single policy rather than two different policies; (2) the court relied upon the Pennsylvania No-fault Act, which is inapplicable in this case in determining the amounts of benefits available."

Plaintiff in *McKay* received $100,000 from his own insurer, Liberty Mutual, after incurring injuries from an automobile accident in the excess of $160,000. The court firmly stated that, "by receiving $10,000 from General Accident he cannot be said to be receiving 'duplicate benefits,' but is instead receiving 'additional' benefits." *McKay,* 579 F.Supp. at 744.

Similarly in *Swezey v. Home Indemnity Company,* 571 F.Supp. 224, 231 (D.Del., 1983), the court allowed the recovery by plaintiff from plaintiff's own Delaware policy, and the Pennsylvania policy, and in doing so stated:

"The court finds that the Amica Insurance contract with Mrs. Swezey and the Home Insurance contract with Kurtz are not similar insurance contracts. The Amica contract provides that, "[A]ny insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. The Amica contract thus provides for "excess" coverage, while the Home contract with Kurtz provides the primary coverage applicable to the Kurtz automobile in which Daniel Swezey was a passenger. Since 'excess' and 'primary' coverage are different coverages, condition H does not bar plaintiff's recovery from Home and Home is required to pay $10,000 as the basic-loss benefits to plaintiffs under its policy with Kurtz."

According to *Swezey,* the Prudential policy is considered to provide primary coverage to the Rumsey vehicle in which Susan Holden was a passenger.

While the court can not determine whether the New York Allstate policy carried excess coverage,[5] we are led by *McKay* and hold that by receiving $50,000 from Prudential, Susan Holden is receiving additional benefits not duplicate benefits.

It is well established that summary judgment will be granted only in the clearest of cases. *Hankin v. Mintz,* 279 Pa. Super. 538, 419 A.2d 588 (1980); *Bowman v. Sears, Roebuck & Co.,* 245 Pa. Super. 530, 369 A.2d 754 (1976). The pleadings, depositions, answers to interrogatories and admissions, together with affidavits must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Bollinger v. Palmerton Area Communities Endeavor Inc.,* 241 Pa. Super. 341, 361 A.2d 676 (1976); *Husak v. Berkel Inc.,* 234 Pa. Super. 452, 341 A.2d 174 (1975). Moreover, the record must be viewed in light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Johnson v. Baker,* 346 Pa. Super. 183, 499 A.2d 372 (1985); *Wheeler v. Johns-Manville Corp.,* 342 Pa. Super. 473, 493 A.2d 120 (1985).

It is the view of the court that the above cases control the court's disposition of the instant issue. The foregoing establish that plaintiff is entitled to receive from the Pennsylvania resident's no-fault carrier, the minimum benefits determined by New York law. Therefore, defendant's motion for summary judgment is denied. Plaintiffs' motion for partial summary judgment on the issue of liability is granted in accordance with this opinion, as recovery is limited to $50,000 and costs.

5. Neither party supplied the court with a copy of the New York state insurance policy issued to plaintiff's father by Allstate Insurance Company.

## ORDER

And now, October 30, 1987, summary judgment on liability is entered in favor of plaintiffs and against defendant for $50,000 in medical benefits plus costs. Defendant's motion for summary judgment is denied.