OPINION OF THE COURT
Richard F. Kuhnen, J.
In this action for a declaratory judgment interpreting a contract of insurance between defendant and plaintiff’s son, both parties move for summary judgment.
On October 20, 1974 plaintiff, a passenger in an automobile driven by her son, Norman Davies, was seriously injured in a collision with an automobile driven by Robert H. Austin.
Defendant Nationwide has expended on behalf of plaintiff $46,661.98 in payment of "basic economic losses” incurred by plaintiff in connection with injuries sustained in the accident. *900 These payments represent "personal injury protection” payments, under its contract, for basic economic loss, pursuant to subdivision 1 of section 671 of the Insurance Law.
Defendant stands ready to expend the additional sum of $3,338.02 on behalf of plaintiff upon proper proof of unpaid items of "basic economic loss” and designation of the intended payee. This would bring defendant’s payments up to $50,000, the alleged limit of liability under its basic contract and under the statute.
Plaintiff has now incurred additional bills for hospital and medical care which, according to her complaint, "exceeded the mandatory basic economic losses for which a limit of $50,000 is prescribed by law”. Defendant has refused to pay any amount above the $50,000 contract and statutory limit, although it has an indorsement on its insurance contract with Norman Davies providing for "additional personal injury protection” up to $150,000.
It bases its refusal on the fact that on or about March 2, 1977 plaintiff executed and delivered to Austin, the driver of the other vehicle, a release from liability for damages for her personal injuries for the consideration of $19,000, without reserving the subrogation rights of defendant as specifically required under the terms of the "additional personal injury protection” contract indorsement.
Plaintiff’s position is that no distinction should be made between defendant’s liability for basic economic loss under the original contract and its liability under the indorsement.
Plaintiff on the other hand contends that "basic economic loss” is, by statutory definition, limited to $50,000, that the "additional personal injury protection” for "extended economic loss” is not something mandated by statute and is therefore a separate arm’s length agreement between the parties and governed by the provisions of that agreement under traditional insurance contract rules. Those provisions, among others, state that: "In the event of any payment for extended economic loss, the Company is subrogated to the extent of such payments to the rights of the person to whom, or for whose benefit, such payments were made. Such person must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing to prejudice such rights.”
By failing to reserve subrogation rights in its release of Austin, plaintiff, says Nationwide, has breached the contract *901 and relieved defendant from any further liability beyond $50,000.
Counsel for defendant points to the decision in Narus v Pixley (88 Misc 2d 885) as being squarely in point. In that case a carrier asserted a lien for payment of decedent’s funeral expenses, under similar extended or additional personal injury coverage. Plaintiff argued that funeral expenses were outside the scope of allowable first-party benefits under the statute. The court disagreed, holding that this was a matter of contractual rights, outside of the statute, stating (p 887):
"Can the parties contract for more extensive protection than that afforded by the Comprehensive Automobile Insurance Reparations Act (Insurance Law, art 18)?
"This court answers that question in the affirmative.”
Plaintiff’s counsel does not question the correctness of this decision, but distinguishes it from the instant situation in that it did not concern subrogation rights to third-party claims, but expenses outside the scope of allowable first-party benefits as defined in the statute.
We find that distinction valid in fact, but irrelevant in principle. The issue, as enunciated in that case, and quoted above, is whether the carrier can contract for more extensive protection on any conditions not prohibited by statute or public policy. We find no reason advanced why it cannot do so.
The next question presented is whether the execution and delivery of the release without reservation of subrogation rights relieved the defendant carrier from further liability to plaintiff under the "additional personal injury protection”. We hold that it did. (Home Ins. Co. v Bernstein, 172 Misc 763; 10 NY Jur, Contracts, § 379; Metropolitan Cas. Ins. Co. v Badler, 132 Misc 132; Phoenix Ins. Co. v Parsons, 129 NY 86; Ann. 92 ALR2d 110; Ann. 13 ALR3d 102.)
The subrogation provisions of the "additional personal injury protection” limit it to "any payment for extended economic loss”. The release, which plaintiff executed, plaintiff argues, was only for pain and suffering, something not covered by the subrogation provision, citing Scinta v Kazmierczak (59 AD2d 313) and United States Fid. & Guar. Ins. Co. v Stuyvesant Ins. Co. (61 AD2d 1123). If the release was intended to cover only pain and suffering, unfortunately it was not so limited. It is in the traditional all-encompassing language, and recites in addition that it is to cover claims "more particularly *902 arising from general damages sustained by me as a result of bodily injuries”. Such "general damages” undoubtedly include, among others, "extended economic loss” and would therefore preclude any further claim therefor by defendant by way of subrogation.
It is the opinion of the court, in the light of the above discussion, that plaintiffs execution and delivery of the general release relieved defendant of any further obligation to her under the "additional personal injury protection” provisions of the contract of insurance.