Elizabeth SWEZEY and Robert J.
Swezey, Guardians of Daniel
Swezey, Plaintiffs,

v.

The HOME INDEMNITY COMPANY,
Defendant.

Civ. A. No. 81–200.

United States District Court,
D. Delaware.

Aug. 22, 1983.

Richard I.G. Jones, Carl Schnee, Susan C. Del Pesco and Vernon R. Proctor of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for plaintiffs.

F. Alton Tybout of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant.

## OPINION

LATCHUM, Chief Judge.

Plaintiffs, Elizabeth and Robert J. Swezey, Guardians of Daniel Swezey, instituted this action against the Home Indemnity Company ("Home"), pursuant to 28 U.S.C. § 2201, seeking a judgment declaring that their son Daniel Swezey is entitled to recover "basic loss benefits" covering his sizable and continuing expenses for medical care and rehabilitation under the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa.Stat.Ann. § 1009.101 *et seq.* ("Pennsylvania Act"). The background facts of this case were set forth in this Court's Memorandum Opinion dated January 14, 1982. 529 F.Supp. 608 (D.Del.1982). On that date, this Court granted defendant's motion for summary judgment, holding that the plaintiffs must recover under the provisions of the Delaware No-Fault Act ("Delaware Act"), 21 *Del.C.* § 2118, and were not entitled to recover the unlimited benefits provided by the Pennsylvania Act. 529 F.Supp. at 614. The Court of Appeals for the Third Circuit vacated the judgment and remanded the case, ruling that, although this Court correctly determined that the provisions of the Delaware Act should apply to determine the benefits due Swezey, it failed "to calculate the amount, if any, of benefits due" under Home's insurance poli-

cy issued to Russell Kurtz. 691 F.2d 163, 168 (3d Cir.1982).

Both parties have renewed their motions for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Therefore, this Court must now determine the amount of benefits to which Swezey is entitled under the insurance contract issued by Home to Russell Kurtz, the father of the operator of the automobile in which Daniel Swezey was a passenger at the time he sustained his injuries.

## I. BASIC LOSS BENEFITS

### A. *The Insurance Contract*

The insurance contract between Kurtz and Home provides that:

[i]n accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act, the Company will pay any or all personal injury protection benefits for: (a) medical expenses, . . . for bodily injury to an eligible person due to an accident resulting from the . . . use of a motor vehicle . . . .

    \*    \*    \*    \*    \*    \*

"eligible person" means (b) "any . . . person who sustains injury (1) while occupying . . . the insured motor vehicle; . . . .

    \*    \*    \*    \*    \*    \*

The premiums for and the coverage of this policy conforms [sic] to the Pennsylvania No-Fault Motor Vehicle Insurance Act.

Docket Item ("D.I.") 12A, pp. A64, A69. Therefore, to determine the coverage available to Daniel Swezey, it is necessary to consult Sections 110(b)(1) & (c)(1) of the Pennsylvania Act.[1]

### B. *Sections 110(b)(1) and (c)(1)*

■ Section 110(c)(1) provides the choice of law rule which will measure the basic loss benefits. Specifically, it provides that the basic loss benefits available to a victim shall be determined pursuant to the state no-fault plan in effect in the state of domicile of the victim on the date the motor vehicle accident resulting in injury occurred. In this case, Daniel Swezey was domiciled in Delaware on the date of the accident. Therefore, the provisions of the Delaware Act must be utilized to determine the amount of basic loss benefits Daniel Swezey is entitled to recover under the Home insurance contract issued to Kurtz.

■ Section 110(b)(1) provides that an insurance contract "shall be construed to contain, coverage sufficient to satisfy the requirement for security covering a motor vehicle" in the state in which the victim is domiciled. In Delaware, the minimum no-fault insurance coverage which will satisfy the requirements of the Delaware Act is $10,000. *See* 21 *Del.C.* § 2118(a)(2)(b). Therefore, Section 110(b)(1) requires an insurance contract, written pursuant to the Pennsylvania Act, to provide an eligible victim, who is domiciled in Delaware, sufficient coverage to satisfy the $10,000 minimum requirement prescribed by the Delaware Act.

There is no dispute between the parties that Section 110(b)(1) is applicable to the insurance contract issued by Home to Kurtz, however, the plaintiffs argue that:

1. Sections 110(b)(1) & (c)(1) provide:
   (b) Conforming coverage.—
   (1) An obligor providing security for the payment of basic loss benefits shall be obligated to provide, and each contract of insurance for the payment of basic loss benefits shall be construed to contain, coverage sufficient to satisfy the requirements for security covering a motor vehicle in any state in which any victim who is a claimant or whose survivors are claimants is domiciled or is injured.
   (c) Applicable law.—
   (1) The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

The difficulty presented in this case is due to the language of 40 Pa.Stat.Ann. § 1009.110(b)(1) wherein the no-fault benefits due to a non-domiciliary are those "sufficient to satisfy the requirements" of the domicile state.

Delaware does not have a maximum coverage, it has a minimum. Therefore, the meaning of "sufficient" is more elusive.

D.I. 51 at 1.

■ Plaintiffs argue that the Court should look to the legislative history underlying the Pennsylvania Act. One of the purposes of the framers, when enacting the Pennsylvania Act, was to provide the "maximum feasible restoration of all individuals injured and compensation of economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways."[2] *See Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629, 631 (1980) (emphasis omitted). The plaintiffs thereby maintain that "[i]n order to give Daniel Swezey the 'maximum feasible restoration,' he must be awarded $100,000 in no-fault benefits as that sum represents the maximum coverage available from [Home] at the time of the policy covering the accident in question." (D.I. 51 at 2.)

The Court has found two cases that have awarded basic loss benefits pursuant to the Pennsylvania Act to victims who were not domiciled in Pennsylvania at the time of the automobile accident. *See Pryor v. Fireman's Fund Insurance Co.*, 537 F.Supp. 971 (W.D.Pa.1982), *aff'd*, 696 F.2d 984 (3rd Cir. 1982); *Shishko v. State Farm Insurance Co.*, 553 F.Supp. 308 (E.D.Pa.1982). In *Pryor* the plaintiff, a domiciliary of Connecticut, sustained injuries in an automobile accident which occurred in Pennsylvania, while he was riding as a passenger in a vehicle owned and operated by a New Jersey domiciliary. The vehicle was struck by a second vehicle which was insured under the Pennsylvania Act. The plaintiff brought action against his insurer and the insurer of the second vehicle seeking the unlimited no-fault benefits provided by the Pennsylvania Act.

*Pryor* first noted that Section 110(c)(1) contains the choice of law provisions for determining the yardstick to be used for calculating basic loss benefits to a victim who is domiciled in another state:

This rule seems to be quite clear; if the victim's home state has a no-fault plan, his basic loss benefits are determined by that plan; if the victim's home state lacks a no-fault plan, then he must look to the law of the state in which the accident occurred. Because the plaintiff had a Connecticut domicile at the time of the accident, we must first look to the law of that state and see if it contains a no-fault plan.

537 F.Supp. at 973. After finding that the State of Connecticut had a no-fault plan and that the extent of the plaintiff's recovery of basic loss benefits was governed by the law of the State of Connecticut, it held, without discussion, that the plaintiff was entitled to $5,000 in no-fault benefits as provided by the Connecticut No-Fault Motor Vehicle Insurance Act ("Connecticut Act"). *See* Conn.Gen.Stat. § 38–320(a).[3]

■ An examination of the Connecticut Act and the rules promulgated thereunder is necessary in order to understand the result of the decision. In Connecticut, an owner of a motor vehicle registered in Connecticut, must provide security for the payment of basic reparation benefits (no-fault benefits) and residual liability insurance. *See* Conn.Gen.Stat. § 38–327(a); *Gentile v. Altermatt*, 169 Conn. 267, 363 A.2d 1, 6 (1976). The security required by Section

---

**2.** Daniel Swezey was injured in an accident which occurred on a Delaware highway.

**3.** Section 38–320(a) provides:

*Liability of owner's insurer for basic reparation benefits.*

(a) The owner's insurer is liable to pay, without regard to fault, basic reparations benefits under a uniform separately identifiable coverage of five thousand dollars per person per accident for economic loss resulting from injury arising out of the ownership, maintenance or use of a private passenger motor vehicle as a motor vehicle, subject to the provisions of this chapter.

38–327(a) may be provided by a contract of insurance. *See* Section 38–327(b).[4] Any insurance contract which purports to provide coverage for basic reparation benefits is deemed to include all coverage required by the Connecticut Act. One of the requirements of the Connecticut Act is that a motorist must maintain coverage in the amount of $5,000 in basic reparation benefits. *See Neagle v. Connecticut Blue Cross Inc.,* 36 Conn.Sup. 561, 420 A.2d 1169, 1170 n. 5 (1980); *Conroy v. The Union Labor Life Insurance Co.,* 37 Conn.Sup. 117, 442 A.2d 470 (1978). This sum is the minimum amount required under the Connecticut Act; there is no maximum limitation. Section 38–330, however, allows an insurer to offer additional reparation coverage above the required minimum amount.[5] Furthermore, the Insurance Commissioner has issued a rule promulgated pursuant to Section 38–330 which requires insurers to offer coverage in amounts above the basic reparation benefits. *See* Conn. State Agencies § 38–330–1. In addition, the rule expressly provides that Section 38–330–1 "is not intended to restrict the number of additional optional added reparations coverages any company may wish to market voluntarily." *See id.*[6] Therefore, when *Pryor* awarded

4. Section 38–327(a) & (b) provides:

*Mandatory security requirements.* (a)(1) The owner of a private passenger motor vehicle required to be registered in this state shall provide and continuously maintain throughout the registration period security in accordance with this chapter for payment of basic reparations benefits and the liabilities covered under residual liability insurance, except that an owner who is a member of the military service and who principally garages the vehicle outside of this state shall provide the security required for payment of basic reparations benefits only while such vehicle is operated in this state. Such member of the military service shall maintain liability coverage sufficient to provide proof of financial responsibility required under section 14–112. (2) The owner of a private passenger motor vehicle not required to be registered in this state shall maintain security in accordance with this chapter in effect continuously throughout the period of its operation, maintenance or use as a motor vehicle within this state with respect to accidents occurring in this state.

(b) The security required by this chapter may be provided by a policy of insurance complying with this chapter issued by or on behalf of an insurer authorized to transact business in this state or, if the vehicle is registered in another state, by a policy of insurance issued by or on behalf of an insurer authorized to transact business in either this state or the state in which the vehicle is registered.

5. Section 38–330 provides:

*Optional reparations coverage.* Basic reparations insurers may offer optional added reparations coverages providing other benefits as compensation for injury or harm arising from the ownership, maintenance or use of a private passenger motor vehicle, including loss excluded by limits on funeral and burial expenses, and loss excluded by limits on work loss and survivor's loss. The insurance commissioner may adopt rules requiring that specific optional added reparations coverages be offered by insurers writing basic reparations insurance. Added reparations coverages are not limited to injuries occurring within this state, but may be limited to injuries occurring within the United States of America, its territories and possessions and Canada.

6. Section 38–330–1 provides:

*Optional added reparations coverages.* The following optional added reparations coverages must be offered as of January 1, 1973, by insurers writing basic reparations insurance:

| | Limits of options inclusive of amounts recovered under basic reparations benefits: | | |
| --- | --- | --- | --- |
| | Option I | Option II | Option III |
| Total benefits per person per accident | $10,000 | $15,000 | $25,000 |
| 85% of the value of work loss, not to exceed | $ 200 per week | $ 200 per week | $ 200 per week |
| Survivor's benefits not to exceed | $ 200 per week | $ 200 per week | $ 200 per week |
| Funeral and burial expenses | $ 2,000 | $ 2,000 | $ 2,000 |

This regulation is not intended to restrict the number of additional optional added reparations coverages any company may wish to market voluntarily.

The following is the standard endorsement to be used if one of the above options is elected by the insured:

CONNECTICUT BASIC REPARATIONS BENEFITS ENDORSEMENT (ADDED BENEFITS)

It is agreed that, with respect only to any amounts payable by the Company because of bodily injury to a basic reparations insured as a result of any one accident, the Limit of Liability provision of the Connecticut Basic Reparations Benefits Endorsement is amend-

$5,000 to the plaintiff as basic benefits under the Pennsylvania Act, the Court determined that the minimum basic reparation benefits required by the Connecticut Act satisfied the provisions of Sections 110(b)(1) and (c)(1) of the Pennsylvania Act.

In *Shishko, supra,* 553 F.Supp. 308, the plaintiff, a domiciliary of New York, was involved in an automobile accident in Pennsylvania with the defendant's insured, who carried an insurance contract pursuant to the Pennsylvania Act. After evaluating the New York Comprehensive Automobile Insurance Reparation Act ("New York Act") and concluding that the New York Act was a no-fault plan, the court, in *dicta,* stated that if the provisions within the *Shishko* insurance contract had been the same as the provisions within the Kurtz insurance contract in *Swezey,* it would have awarded $50,000 to the plaintiff because the New York Act restricts the no-fault coverage to that amount. *Id.* at 311–12.[7]

A brief examination of the New York Act is necessary to understand the *dicta* in *Shishko.* The New York Act requires the owner of a New York registered motor vehicle to provide security for the payment of first party benefits. *See* N.Y. Insurance § 672(1) (27 McKinney) (Supp.1982–83). The security required by this section may be in the form of an insurance contract and such contract must provide basic economic loss (no-fault benefits) for coverage of up to $50,000. *See* Sections 672(1) & 671(1) & (2).

This amount represents the minimum coverage an insurer must maintain in order to operate a New York registered vehicle: "[p]arties cannot contract without legislative authorization, to less than mandated by statute." *Narus v. Pixley,* 88 Misc.2d 885, 389 N.Y.S.2d 273, 274 (1974). The $50,000 minimum, however, is not the only coverage a motorist can obtain from an insurer: "the parties [may] contract for more extensive protection than that afforded by the New York Act." *Id. See also Davies v. Nationwide Mutual Insurance Co.,* 99 Misc.2d 899, 417 N.Y.S.2d 387, 388–89 (1979). Therefore the New York Act is similar to the Connecticut Act; it allows an insurer to offer additional no-fault coverage above the statutory minimum. Accordingly, the amount that the *Shishko* court would have awarded, had it not been for the ambiguity within the insurance contract, was the minimum requirements imposed by the New York Act, not the maximum an insurer could have offered to a New York vehicle owner.

■ *Pryor* and *Shishko* demonstrate that in order to determine the basic loss benefits due a non-Pennsylvania victim, who is domiciled in a state with a no-fault plan, one must look to the requirements set forth by the no-fault plan in the victim's state of domicile. In *Pryor* and *Shishko,* the basic loss benefits were determined by reference to the Connecticut and New York Acts respectively. Both of the Connecticut and

---

ed by substituting the amount shown under A, "Total Aggregate Limit," in the [Schedule below][1] for the amount of "$5,000" which appears in the first paragraph of the Limit Of Liability provision, and is further amended by substituting the amount shown under B, "Maximum Weekly Limit," in the [Schedule below][2] for the amount of "$200" which appears in subparagraph (a) of the first paragraph of the Limit of Liability provision. If no amount is shown under "B" in [Schedule below][1] the "Maximum Weekly Limit" remains unchanged.

This endorsement is subject to all the terms and provisions of the Connecticut Basic Reparations Benefits Endorsement not expressly modified herein.

SCHEDULE

Limits of amounts payable to or for the benefit of each basic reparations insured or his dependent survivors:

| A. Total Aggregate Limit | B. Maximum Weekly Limit |
|---|---|
| $.................. | $..................... |

[1] Under Option III the company shall have available higher per week limits (in $100 multiples) if the insured named in the policy has a higher per week exposure and desires to purchase higher limits.

[2] A company may substitute another designator for the word "Schedule" and may place the material included in the Schedule in any other part of the policy as appropriate.

7. The Court did not award the plaintiff $50,000 in basic loss benefits because it found an ambiguity in the insurance contract created by a schedule of coverage. It therefore awarded a sum greater than this amount. *See* 553 F.Supp. at 312–14. No similar schedule of coverage is present in the Swezey contract.

New York no-fault plans required most motorists to obtain a minimum amount of no-fault insurance and both plans allowed an insurer to offer to their insureds coverage above the statutory minimum.[8] The additional coverage which may be offered, however, is generally provided by the insurer, only when an additional premium is paid. Absent an express agreement or the presence of an ambiguity, the insurance contract is interpreted to include only the minimum no-fault coverage required by the victim's state no-fault plan.

When *Pryor* and *Shishko* were determining the basic loss benefits by reference to the victim's state no-fault plans, they first looked to the minimum coverage required by the respective no-fault plans. In *Pryor,* the Connecticut Act's minimum was $5,000; in *Shishko,* the New York Act's minimum was $50,000. In *Shishko,* however, the court found an ambiguity within the insurance contract and thereby awarded a greater sum. By looking to the minimum requirements of the respective no-fault plan, *Pryor* and *Shishko* were following the law of the states of Connecticut and New York that provided that unless an insured has actually contracted for additional coverage, the insurance contract will be construed to provide coverage which equals the requirements of the respective no-fault plans of the victim's domicile. *Pryor* and *Shishko,* therefore, stand for the proposition that if a Pennsylvania insured desires additional no-fault coverage for a non-Pennsylvania victim, above the minimum requirements of the victim's state no-fault plan, he must contract for such additional coverage. Merely because the Pennsylvania insured has the ability to contract for additional coverage, however, does not mandate a finding that a victim domiciled in another state is entitled to recover an amount of basic loss benefits which exceeds the requirements of the victim's state no-fault plan.

Turning to the Delaware Act, an owner of a motor vehicle required to be registered in Delaware is required to provide security of $10,000 for the payment of no-fault benefits. The Delaware Act, like the Connecticut and New York Acts, allows a Delaware motor vehicle owner to purchase additional no-fault coverage if such coverage is offered, but if such option is not exercised by the insured, the insurance contract will be interpreted to provide coverage equalling the minimum statutory requirements. *See* Section 2118(d). The same analysis applies to an insurance contract issued pursuant to the Pennsylvania Act. Merely because the Delaware Act allows the insured motorist the option to purchase additional no-fault insurance, does not entitle a victim who is domiciled in Delaware and is claiming basic loss benefits under the Pennsylvania Act, to recover an amount greater than the Delaware statutory minimum unless the Pennsylvania insured has purchased such additional coverage.

In this case, Home did not offer additional coverage for basic loss benefits for a victim such as Daniel Swezey. (D.I. 45, ¶ 4.) Nor have the plaintiffs demonstrated any ambiguity within the insurance contract between Home and Kurtz, as in *Shishko.* Furthermore, those statements by Kurtz (D.I. 48A, p. A1) stating that he would have purchased additional coverage if Home had offered such coverage is irrelevant to the determination of the scope of coverage by the Kurtz insurance contract to a victim domiciled in Delaware. Accordingly, the Court holds that Section 110(b)(1) & (c)(1) restricts Daniel Swezey's recovery of basic loss benefits under Home's insurance contract issued to Kurtz to $10,000.

## II. DUPLICATION OF BENEFITS

Amica Insurance Company ("Amica") has paid Daniel Swezey the total sum of $10,000 as no-fault benefits pursuant to a policy issued by Amica to Elizabeth Swezey, Daniel's mother, in compliance with the

---

**8.** In Connecticut, the insurer must offer additional coverage above the basic reparation benefits provided by statute. *See* Rule 38–330–1.

1

Delaware No-Fault Act. (D.I. 48A, pp. A12–A31.) Home contends that if Home is required to pay $10,000 as basic loss benefits under Kurtz's policy to the plaintiffs, there will be a payment of duplicate no-fault benefits. Home argues that such duplication of benefits is prohibited by Condition H of the Home insurance contract with Kurtz, which, in pertinent part, provides:

> No eligible person shall recover duplicate benefits for the same elements of loss under this or *any other similar automobile insurance* including self-insurance. If the eligible person has such other insurance applicable to the accident, the maximum recovery shall not exceed the amount payable under the insurance or self-insurance providing the highest dollar limit.

D.I. 12A at A–69 (emphasis added).

Condition H is derived from the Pennsylvania model insurance policy and generally provides that no victim shall recover duplicate benefits for the same elements of loss which are covered by a similar automobile insurance contract. Shrager has stated that:

> A person may recover benefits for different or additional losses that he has insured against. But he may not receive, for example, basic loss benefits under two insurance policies. In *Polinsky v. Nationwide Ins. Co.,* a Pennsylvania resident was injured in New York while a passenger in a car insured in New York. He received no-fault benefits under the New York coverage for the car, then attempted to collect on his own insurance in Pennsylvania. The Court denied his claim, citing the non-application of benefits provision in his insurance policy.

Shrager, *The Pennsylvania No-Fault Motor Vehicle Insurance Act* (1979) at 124–25.

The Court finds that the Amica insurance contract with Mrs. Swezey and the Home insurance contract with Kurtz are not similar insurance contracts. The Amica contract provides that "any insurance we pro-vide for a vehicle you do not own shall be excess over any other collectible insurance." (D.I. 48A at A–16.) The Amica contract thus provides for "excess" coverage, while the Home insurance contract with Kurtz provides the "primary" coverage applicable to the Kurtz automobile in which Daniel Swezey was a passenger. Since "excess" and "primary" coverage are different coverages, Condition H does not bar the plaintiffs' recovery from Home and Home is required to pay $10,000 as the basic loss benefits to the plaintiffs under its policy with Kurtz.

## III. INTEREST DUE [9]

Under the Pennsylvania Act, Section 106(a)(2) provides that "no-fault benefits are overdue if not paid within thirty days after receipt by the [insurer] of each submission of reasonable proof of the fact and the amount of loss sustained." The Supreme Court of Pennsylvania has held "that where a payment is overdue as defined by § 106, 18% interest is owed on that payment regardless of the good faith of the insurer or the reasonable cause" of the delay. *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 425 A.2d 419, 421 (1981). *See also Baker v. Aetna Casualty & Surety Co.,* —— Pa.Super. ——, 454 A.2d 1092, 1100 (1982). Accordingly, Home must pay $10,000 together with interest thereon at the rate of 18 per cent per annum from the thirty-first day after the submission of reasonable proof by the plaintiffs to Home of their claims for basic loss benefits.

## IV. ATTORNEY FEES

At oral argument, plaintiffs conceded that they are not seeking attorney fees for services performed prior to the remand by the Court of Appeals for the Third Circuit, but they are seeking attorney fees for those services performed subsequent to the remand. Section 107(3) of the Pennsylvania Act provides that if a court determines that an insurer has denied a claim, or any significant part of a claim without reasona-

---

9. The Court looks to the Delaware Act to determine only the basic loss benefits. It does not look to the Delaware Act for the plaintiffs' claims for interest and attorney fees, but rather must refer to Sections 106(a)(2) and 107(3) of the Pennsylvania Act.

ble foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended. The Court finds that the legal issues which Home raised after the remand were not advanced in bad faith, but rather were novel and had reasonable legal foundations. *See, e.g., Hayes v. Erie Insurance Exchange,* 261 Pa. Super. 171, 176, 395 A.2d 1370, 1373 (1978). Moreover, Home prevailed on the merits on some of its arguments, as evidenced by the fact that the Court did not find Home liable for $100,000, the amount plaintiffs sought. Accordingly, the Court concludes that Home's denial of the plaintiffs' claims were not made without reasonable foundation and it will deny the plaintiffs' request for attorney fees.

An order will be entered in accordance with this opinion.