# Linda Jean Hunt

## v.

# Erie Insurance Group, et al.

Record No. 870869

June 9, 1989

Present: All the Justices

*William D. Dolan, III (Kenneth C. Bass, III; Carolyn S. Motes; Katherine Davidow-Lucas; Venable, Baetjer & Howard; Motes, Fite & O'Brien,* on briefs), for appellant.

*William L. Carey (Gerald R. Walsh; Miles & Stockbridge; Crews & Hancock,* on brief), for appellees

Justice Stephenson delivered the opinion of the Court.

The dispositive issue in this appeal is whether an insurance policy is ambiguous. In deciding this question, we must apply Pennsylvania law.

Linda Jean Hunt's motion for judgment, as it relates to this appeal, sought a judgment declaring that under the terms of an insurance policy issued by Erie Insurance Exchange (Erie), she "is entitled to coverage for unlimited medical and rehabilitation expenses." Erie defended on the ground that it had paid Hunt the full amount of the benefits due under the policy, which it alleged was $50,000 for medical and rehabilitative expenses. Following a bench trial, the trial court entered judgment in favor of Erie, and Hunt appeals.

On June 26, 1982, Hunt, a resident of the Commonwealth of Virginia, was seriously and permanently injured in an automobile accident that occurred in the State of Colorado. At the time, she was a passenger in an automobile operated by Ronald Rebottini and was insured under an insurance policy issued by Erie to Robert L. Rebottini, a resident of the Commonwealth of Pennsylvania.

The parties agree that Pennsylvania law governs their rights as established under the insurance policy and that the policy incorporated the terms of the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa. Stat. Ann. §§ 1009.101 through 1009.701 (Purdon 1984) (the Act).[1] The parties also agree that Hunt is an

---

[1] The Act is no longer in effect, having been repealed by the Pennsylvania legislature. *See* 75 Pa. Stat. Ann. § 1701 (Purdon 1984); Act of February 12, 1984, P.L. 26, No. 11, § 8(c), effective October 1, 1984.

"eligible person" as defined in the policy.[2] They disagree, however, over whether the medical expense benefits are unlimited, as Hunt contends, or whether the benefits are limited to $50,000, as Erie contends.

Five portions of the endorsement to the insurance policy are relevant to this appeal. First, the endorsement contains a "Benefits Table"[3] which states that the "named Insured and any relative . . . [and] all other eligible persons" shall receive "[u]nlimited" medical expense benefits.

Second, the endorsement states that "[i]n accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act, the ERIE will pay *any or all* personal injury protection benefits for: (a) medical expenses . . . for bodily injury to an eligible person due to an accident resulting from the maintenance or use of a motor vehicle as a vehicle." (Emphasis added.)

Third, under a subheading entitled "LIMITS OF LIABILITY," the endorsement provides in pertinent part:

Regardless of the number of persons insured, . . . the ERIE's liability for personal injury protection benefits with respect to bodily injury to any one eligible person in any one motor vehicle accident is limited:

. . . .

(b) for any other eligible person to the "Basic Limits" amounts shown on the Benefits Table which is on page 1 of this endorsement.

The "Benefits Table" referred to under "LIMITS OF LIABILITY" is the table previously mentioned, which states that the "Basic Limits" for medical expense benefits are "Unlimited."

Fourth, paragraph I of the endorsement's "CONDITIONS" provides in pertinent part:

---

[2] The policy defines an "eligible person" as:
   (a) the named Insured or any relative who sustains injury while occupying, or as a pedestrian struck by, any motor vehicle;
   (b) any other person who sustains injury while occupying, or as a pedestrian struck by, the insured motor vehicle.
[3] A copy of the "Benefits Table" is set forth in the appendix to this opinion.

I. Applicable Law. Regardless of any other provisions of this endorsement, the personal injury protection coverage available to an eligible person . . . shall be in accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act.

With respect to nonresidents of Pennsylvania, the Act provides in pertinent part:

(c) Applicable law.—

(1) The basic loss benefits available to any victim . . . shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

40 Pa. Stat. Ann. § 1009.110(c)(1). Colorado's no-fault plan, as set forth in the Colorado Auto Accident Reparations Act, established a minimum no-fault coverage of $25,000 for medical expenses and $25,000 for rehabilitation expenses. Colo. Rev. Stat. §§ 10-4-706(1)(b), -706(1)(c)(II) (1979).

Fifth, Section II of the endorsement states in part that "[t]he premiums for and the coverage of this policy conform to the Pennsylvania No-Fault Motor Vehicle Insurance Act."

Erie contends that when the policy and the Act are read together, no ambiguity exists. Erie focuses upon Condition I, which states that "[r]egardless of any other provisions of this endorsement, the . . . coverage available to an eligible person . . . shall be in accordance with [the Act]." Erie asserts that because Hunt was a nonresident of Pennsylvania when she was injured and the accident occurred in Colorado, the Act directs that the "basic loss benefits available to [her] shall be determined pursuant to the provisions of [Colorado's] no-fault plan for motor vehicle insurance." 40 Pa. Stat. Ann. § 1009.110(c)(1).

Hunt contends, however, that the policy provides for unlimited medical expense benefits for an eligible person, and if Condition I and the Act purport to limit her benefits, the policy is ambiguous.

Because the policy is ambiguous, Hunt asserts, the policy must be construed against the insurer.

■ A contract of insurance is ambiguous if it² is susceptible of two meanings. *See Armon* v. *Aetna Casualty & Surety Co.*, 369 Pa. 465, 468, 87 A.2d 302, 303 (1952). Under established Pennsylvania law, all ambiguous insurance policies will be construed against the insurer. *E.g., Standard Venetian Blind Co.* v. *American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983); *Mohn* v. *American Casualty Co.*, 458 Pa. 576, 586, 326 A.2d 346, 351 (1974).

■ In the present case, the endorsement to the policy is susceptible of two meanings respecting Hunt's entitlement to medical expense benefits. The endorsement provides in three separate places that an "eligible person" is entitled to unlimited benefits. A condition of the endorsement, however, purports to limit coverage. The condition references the Act. The Act, in turn, references the no-fault plan of the state in which the accident occurred, which, in this case, is Colorado. Thus, because an ambiguity exists, we must construe the policy "in a light most strongly supporting the insured," *Mohn*, 458 Pa. at 586, 326 A.2d at 351, *viz*, to provide unlimited medical benefits to Hunt.

We have not found, nor have the parties cited, a Pennsylvania case on point. However, the conclusion we reach is supported by the holding in *Shishko* v. *State Farm Insurance Co.*, 553 F. Supp. 308 (E.D. Pa. 1982), *aff'd w/o pub'd opinion*, 722 F.2d 734 (3d Cir. 1983), a factually similar case applying Pennsylvania law.[4]

■ In *Shishko*, a New York domiciliary was injured by an automobile insured by a Pennsylvania no-fault policy. The policy contained a schedule, virtually identical to the "Benefits Table" in the present case, that appeared to offer Shishko unlimited benefits.

---

[4] Erie strongly relies upon *Swezey* v. *Home Indemnity Co.*, 571 F. Supp. 224 (D. Del. 1983), *on remand from Swezey* v. *Home Indemnity Co.*, 691 F.2d 163 (3d Cir. 1982), *vacating Swezey* v. *Home Indemnity Co.*, 529 F. Supp. 608 (D. Del. 1982). *Swezey*, however, is inapposite. There, the plaintiff was injured in an automobile accident that occurred in the State of Delaware. The plaintiff claimed basic medical benefits under the Pennsylvania Act. The policy provided that the insurer would pay "any or all" medical expense benefits "[i]n accordance with the [Pennsylvania Act]." The court held that the Act was incorporated into the policy, and therefore, the coverage limits of the Delaware no-fault statute applied. 571 F. Supp. at 230.

*Swezey*, is distinguishable from the present case in two particulars. First, unlike Erie's policy, the policy in *Swezey* contained no "Benefits Table" providing for unlimited benefits. Second, nothing suggests that a claim of ambiguity was made in *Swezey*.

However, another policy provision, incorporating Pennsylvania's no-fault statute, purported to limit Shishko's medical benefits to $50,000—the amount allegedly recoverable under New York's no-fault insurance statute. In holding that Shishko was entitled to unlimited medical expense benefits, the court said:

> While the language of a contract should not be tortured to create an ambiguity where none exists . . . the apparent difference between the demands of the statute and the provisions of the policy clearly does create an ambiguity. That ambiguity must be construed against [the insurer].

*Id.* at 313.

For the foregoing reasons, we will reverse the trial court's judgment and remand the case for further proceedings consistent with the views expressed herein.

*Reversed and remanded.*

APPENDIX

AUTO ENDORSEMENT

ERIE INSURANCE EXCHANGE
ERIE INSURANCE COMPANY

## PERSONAL INJURY PROTECTION (PIP)
## NO-FAULT COVERAGE - PENNSYLVANIA

Unless defined in this endorsement, each bold word is used as defined in the policy.

### BENEFITS TABLE

*Basic and Higher Limits*

For the **named Insured** and any **relative**, the "PIP CODE" shown on the Declarations page applies. For all other eligible **persons**, the Basic Limits will apply.

FOR THE NAMED INSURED AND ANY RELATIVE, THE 1ST DIGIT OF THE "PIP CODE" INDICATES THE LIMITS:

| PIP CODE 1ST DIGIT | MEDICAL EXPENSES BENEFIT | WORK LOSS BENEFIT | | REPLACEMENT SERVICES BENEFIT (DAILY)[3] | FUNERAL EXPENSES BENEFIT | SURVIVOR'S LOSS BENEFIT |
|---|---|---|---|---|---|---|
| | | MAXIMUM AMOUNT | MONTHLY MAXIMUM | | | |
| 1 or 6 (Basic Limits) | Unlimited | $15,000 | $1,000[1] | $25 | $1,500 | $ 5,000 |
| 3 or 8 | Unlimited | $15,000 | "Disclosed Earnings" $0-$500[2] | $25 | $1,500 | $ 5,000 |
| 4 or 9 | Unlimited | $25,000 | $1,500[1] | $35 | $1,500 | $10,000 |
| 5 or 0 | Unlimited | $50,000 | $2,500[1] | $50 | $1,500 | $15,000 |

[1] See the Limits of Liability Section of this endorsement for the required adjustment of the monthly maximum **Work Loss** payment.
[2] When a "Disclosed Earnings" amount is shown on the Declarations, it is the monthly maximum **Work Loss** Limit. It applies only to the **named Insured** and **spouse**. A monthly maximum of $1,000 applies only to any other **eligible person**.
[3] The maximum amount is the daily limit for an aggregate period of one year.